**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:25-cv-23184-BB**

WILLIAM MANNING, individually,
and on behalf of all others similarly
situated,

       Plaintiff,

       v.

ZUMPANO PATRICIOS, P.A.,

       Defendant.

_____/

**DEFENDANT ZUMPANO PATRICIOS, P.A.'S MOTION TO DISMISS PLAINTIFF'S**
**CLASS ACTION COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

       Defendant Zumpano Patricios, P.A. ("ZP Law"), pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure, hereby moves this Court to dismiss Plaintiff's Class

Action Complaint (the "Complaint") (ECF No. 1) for lack of subject matter jurisdiction and, in the

alternative, for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

       ZP Law is a law firm which among its areas of practice represents healthcare providers in

disputes with managed care payors over payment for medical services rendered to patients. ZP

Law receives some limited personal information from healthcare providers in connection with

disputes with health insurance companies. ZP Law recently detected a cyber-attack intrusion

involving unauthorized access to parts of its information technology network. ZP Law immediately

took steps to block the unauthorized access, as well as to investigate the incident. Preliminary

investigative findings indicated that an unauthorized third party attempted to access certain files

from ZP Law's system during the incident. ZP Law conducted a thorough review of the impacted data to determine whether sensitive information was present and to identify individuals whose information may have been involved.

Through these efforts, ZP Law determined that information regarding certain individuals may have been affected by the incident. While ZP Law had not (and has not) found proof of any misuse of personal information, in an abundance of caution, ZP Law directly notified individuals who were potentially affected by the incident. A copy of the notification letter sent to Plaintiff, dated July 10, 2025, and explicitly referenced in Paragraphs 3, 13, 32, and 34 of the Complaint, is attached as **Exhibit A** (the "Notice").[1] Within days of receiving the Notice, Plaintiff filed the Complaint on behalf of himself and a proposed nationwide class, alleging that ZP Law failed to properly secure and safeguard his and the proposed class members' personal information.

Plaintiff's Complaint should be dismissed for lack of Article III standing because it fails to plausibly allege a concrete injury that is actual or imminent. Plaintiff does not allege that any unauthorized party has posted his personal information on the dark web or otherwise misused his personal information, nor does he allege any actual harm resulting from the incident. Instead, Plaintiff relies on speculative and hypothetical future injuries (namely, an increased risk of identity theft) that courts in this circuit have consistently held insufficient to establish standing in the context of an alleged data breach. Without a factual basis for actual misuse or a plausible threat of imminent harm, Plaintiff's claims amount to nothing more than generalized fears of future harm insufficient to confer standing. Because Plaintiff has not pled a plausible injury-in-fact, there is no

---

[1] In compliance with Local Rule 5.4(f), ZP Law has filed a version of the exhibit that redacts information it believes in good faith is sensitive, confidential, or private, or is otherwise required to be redacted by Fed. R. Civ. P. 5.2 or CM/ECF Administrative Procedures, Section 6, Redaction of Personal Information, Privacy Policy, and Inappropriate Materials. ZP Law will contemporaneously serve an unredacted version of the exhibit upon all counsel of record.

case or controversy under Article III of the Constitution, and Plaintiff's Complaint should be dismissed in its entirety for lack of subject-matter jurisdiction under Rule 12(b)(1).

Alternatively, Plaintiff's Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). Plaintiff fails to state a claim for negligence (Count One) because he has not plausibly alleged causation. Plaintiff also fails to state a claim for breach of implied contract (Count Two) or breach of the implied covenant of good faith and fair dealing (Count Three) because he has not plausibly alleged the existence of a contract for data security.

For these reasons, the Court should grant ZP Law's Motion and dismiss the Complaint.

## RELEVANT BACKGROUND

### I.        The Cyber-Attack on ZP Law and ZP Law's Response

On or about May 6, 2025, ZP Law detected a cyber-attack intrusion upon parts of its information technology network. (ECF No. 1 ("Compl.") ¶ 2; Ex. A at 1). ZP Law immediately investigated and aggressively responded to the cyber-attack. (Ex. A at 1). Passwords were changed, and unauthorized access was blocked. *Id.* Outside technical experts were also engaged to investigate and evaluate the nature and scope of the incident. *Id.*

During its investigation, ZP Law learned that an unauthorized third party had the opportunity to access and potentially exfiltrate (remove) copies of certain files from ZP Law's IT environment. *Id.* In response, ZP Law conducted a review of the potentially affected files (which involved reviewing individual files on its system) to identify individuals who potentially needed to be notified of this incident. *Id.* Through these efforts, ZP Law determined that a limited amount of Plaintiff's personal information ***may*** have been affected by this incident. *Id.* ZP Law had this information in its system in connection with legal services that the firm had performed on behalf of a client, who was one of Plaintiff's health care providers. *Id.*

While ZP Law had ***not*** (and has not) found proof of any misuse of personal information, in an abundance of caution, ZP Law directly notified individuals, like Plaintiff, who were ***potentially*** affected by this incident. (*See* Compl. ¶¶ 32, 34; Ex. A). The Notice sent to Plaintiff and other individuals contained a description of the security event, steps taken to investigate the incident, steps taken to mitigate any potential harm, instructions for activating credit monitoring services, and instructions regarding how to obtain more information about the incident. (Compl. ¶ 34; Ex. A at 1–2). Additionally, as fully set forth in the Notice, ZP Law is offering credit monitoring and identity theft protection through IDX, a data breach and recovery services expert, at no cost to the recipients. (Ex. A at 1). These services include credit and dark web monitoring, an insurance reimbursement policy, and fully managed identity theft recovery services. *Id.*

## II.    Plaintiff's Alleged Harms

Plaintiff alleges that, in the few days between his receipt of the July 10, 2025 Notice and filing of the Complaint on July 16, 2025,[2] he undertook efforts to mitigate any potential effects of the cyber-attack on ZP Law. Plaintiff alleges that he has "spent time . . . verifying the legitimacy and impact of the [incident], exploring credit monitoring and identity theft insurance options, self-monitoring [his] accounts and seeking legal counsel regarding [his] options for remedying and/or mitigating the effects of the [incident]." (Compl. ¶ 14).

Plaintiff further alleges that he has "suffered actual injury in the form of damages to and diminution in the value of [his] private information." *Id.* ¶ 15. While not alleging any attempt by

---

[2] Plaintiff's counsel has filed similar complaints across the country related to various alleged data breaches, each including virtually identical allegations of harm as those alleged here, and courts have determined that the threshold for Article III standing is not met. *See, e.g.*, **Exhibit B**, Order, *In re: Risas Holdings LLC and Risas Dental Mgmt., LLC Data Breach Litig.*, No. 2:24-CV-00789-SMM (D. Ariz. May 19, 2025) (ECF No. 47) (finding that plaintiffs had "failed to satisfactorily allege the injury-in-fact prong of Article III standing" and dismissing the complaint).

a third-party to misuse his personal data impacted by the breach, Plaintiff avers that he has "suffered lost time, annoyance, interference and inconvenience" as a result of the incident and has "anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using and selling [his] private information." *Id.* ¶ 16. Finally, Plaintiff alleges that he has suffered an "imminent and impending injury arising from the substantially increased risk of fraud, identity theft and misuse" resulting from the incident. *Id.* ¶ 17.

Plaintiff does not allege any actual misuse of his personal information. Instead, Plaintiff alleges, upon information and belief, that unauthorized third parties gained access to his private information "with the ***intent*** of misusing" the information, "including marketing and selling" it. *Id.* ¶ 33 (emphasis added). Plaintiff further alleges that his information "***may*** end up for sale on the dark web or simply fall into the hands of companies that will use the detailed Private Information for target marketing" without his approval. *Id.* ¶ 37 (emphasis added). Most importantly, Plaintiff admits that he is "left to speculate" on the impact of the incident. *Id.* ¶ 36.

### III.     Plaintiff's Claims and Proposed Class

Plaintiff filed this putative class action on July 16, 2025 (ECF No. 1), seeking to hold ZP Law liable for its alleged "failure to properly secure and safeguard" Plaintiff's and the proposed class members' personal information. (Compl. ¶ 1). Plaintiff proposes a nationwide class of all individuals "whose Private Information was exposed to unauthorized third parties as a result of the data breach allegedly discovered by Defendant on or before May 6, 2025." *Id.* ¶ 21. Plaintiff asserts three claims for relief on behalf himself and the proposed class: Negligence; Breach of Implied Contract; and Breach of the Implied Covenant of Good Faith and Fair Dealing.

### LEGAL STANDARDS

### I.     Lack of Article III Standing

Article III of the United States Constitution expressly limits federal jurisdiction to "cases or controversies" and does not permit federal courts to issue advisory opinions. *Miller v. F.C.C.*, 66 F.3d 1140, 1145–46 (11th Cir. 1995) (citing *Flast v. Cohen*, 392 U.S. 83, 94–96 (1968)). "To have a case or controversy, a litigant must establish that he has standing[.]" *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (citation omitted). "[S]tanding requirements 'are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case.'" *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Indeed, standing is "perhaps the most important jurisdictional" requirement. *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citation omitted).

A motion to dismiss for lack of standing implicates the Court's subject matter jurisdiction and, therefore, is construed pursuant to Rule 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."). "[T]he party invoking federal jurisdiction bears the burden of proving standing," *Fla. Pub. Int. Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004), and where, as here, a case is in the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations and internal punctuation omitted).

## II.    Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is therefore permitted 'when on the basis of a

dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (quoting *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

While the Court must accept the well-pled allegations of the Complaint as true and construe them in the light most favorable to Plaintiff, the Complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I.     Plaintiff lacks Article III standing because he has failed to plausibly allege an injury-in-fact.

The "irreducible constitutional minimum of standing" consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted). "To establish injury in fact, a plaintiff must demonstrate he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).

To be "concrete," an injury must actually exist; it must be real and not abstract. *Id.* at 340. "As a general matter, tangible injuries qualify as concrete," although intangible harms can as well. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997 (11th Cir. 2020) (citing *Spokeo*, 136 S.

Ct. at 1549). "Each kind of harm has its own analytical framework, and a plaintiff's proffered harms must be analyzed on a claim-by-claim, harm-by-harm basis." *DiPierro v. Fla. Health Scis. Ctr., Inc*., 737 F. Supp. 3d 1314, 1322 (M.D. Fla. 2024) (plaintiffs failed to plausibly plead facts establishing that any member of the class had suffered an injury-in-fact). The U.S. Supreme Court has clarified that a mere risk of future harm, without more, does not give rise to Article III standing for recovery of damages, even if it might give rise to standing for purposes of injunctive relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435–36 (2021); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023), cert. denied sub nom., 144 S. Ct. 1457 (2024).

For purposes of the "actual or imminent" analysis, a harm is "actual" if it has already occurred, but a risk of future harm does not give rise to standing unless the risk is "sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, n.5 (2013)). "[T]hreatened injury must be *certainly impending* to constitute injury in fact" sufficient to support standing, and "[a]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409, 414 n.5 (emphasis in original). While the standard that a threatened injury be certainly impending to constitute an injury sufficient to confer standing "does not require a plaintiff to show that it is 'literally certain that the harms they identify will come about,' it, at the very least, requires a showing that there is a 'substantial risk' that the harm will occur." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338–39 (11th Cir. 2021) (quoting *Clapper*, 568 U.S. at 414 n.5).

Applying the framework established by the U.S. Supreme Court in *Spokeo* and *Clapper*, the Eleventh Circuit has distilled two legal principles applicable in the context of alleged future harm, including in data breach cases. First, "a plaintiff alleging a threat of harm does not have Article III standing unless the hypothetical harm alleged is either 'certainly impending' or there is

a 'substantial risk' of such harm." *Tsao*, 986 F.3d at 1339 (quoting *Clapper*, 568 U.S. at 409, 414 n.5); *Muranksy v. Godiva Chocolatier, Inc*., 979 F. 3d 917, 931 (11th Cir. 2020) (en banc). Second, "if the hypothetical harm alleged is not 'certainly impending,' or if there is not a substantial risk of the harm, a plaintiff cannot conjure standing by inflicting some direct harm on itself to mitigate a perceived risk." *Id.* (quoting *Clapper*, 568 U.S. at 416, 422); *Muransky*, 979 F.3d at 931.

Here, Plaintiff has not alleged any misuse of his personal information or any other actual harm fairly traceable to the cyber-attack on ZP Law. Instead, Plaintiff alleges that because of the cyber-attack on ZP Law, he is at an increased risk of future harm, including future fraud or identity theft. Plaintiff has failed to show that this hypothetical risk of future harm is either "certainly impending" or that there is a "substantial risk" of such harm. Nor can Plaintiff rely upon his alleged efforts to mitigate what he perceives as an increased risk of future harm to satisfy the injury-in-fact requirement and confer standing.

### A. Plaintiff has not alleged any misuse of his personal information, and his allegations of an increased risk of future misuse are too speculative to give rise to standing.

The Eleventh Circuit has defined a high bar for plaintiffs to establish standing in data breach cases. *See Tsao*, 986 F.3d at 1344; *Green-Cooper*, 73 F.4th at 889. "Evidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing." *Tsao*, 986 F.3d at 1344. Rather, "a plaintiff whose personal information is subject to a data breach can establish a concrete injury for purposes of Article III standing if, as a result of the breach, he experiences 'misuse' of his data in some way." *Green-Cooper*, 73 F.4th at 889 (quoting *Tsao*, 986 F.3d at 1343). Misuse can constitute a present intangible injury or an imminent risk of tangible injury in the future. *See id.* at 889–90, 890 n.9. While "evidence of actual misuse is not necessary for a plaintiff to establish standing following a data breach," a named plaintiff's burden to plausibly

plead factual allegations sufficient to show that the threatened harm of future identity theft was "certainly impending" or that there was a "substantial risk" of such harm is "difficult to meet" without "specific evidence of *some* misuse of class members' data." *Tsao*, 986 F.3d at 1343–44 (emphasis in original). "[V]ague, conclusory allegations that members of the class have suffered" misuse do not suffice, even under a plausibility standard. *See id.* at 1343 (citation omitted).

In *Tsao v. Captiva MVP Rest. Partners, LLC*, the plaintiff-consumer brought a putative class against a fast casual restaurant chain, following a breach of the restaurant's point of sale system that exposed its customers' credit card and other financial information. 986 F.3d at 1335. The plaintiff did not point to any specific instances in which his or any other class member's identity was stolen, cards were fraudulently charged, or data was otherwise misused. *Id.* at 1336. Rather, the plaintiff asserted that he had standing because he and the class faced an increased risk of unauthorized charges and future identity theft. *Id.* The district court concluded that the plaintiff lacked standing because he failed to "identify a single specific, concrete injury in fact that he or anyone else suffered as a result of any misuse of customer credit card information" following the alleged data breach. *Id.* at 1337 (cleaned up). At most, the plaintiff "alleged that hackers *may* have accessed and stolen customer credit card data." *Id.* at 1343 (emphasis in original).

The Eleventh Circuit agreed, holding that the plaintiff had failed to meet his burden that there is a "substantial risk" of harm or that such harm is "certainly impending." *Id.* at 1343. In so holding, the Court reiterated that "conclusory allegations of an elevated risk of identity theft . . . are simply not enough to confer standing." *Id.* (citing *Muranksy*, 979 F.3d at 933) (internal quotation marks and alteration omitted). The Court further explained that the plaintiff had "offer[ed] only vague, conclusory allegations that members of the class ha[d] suffered any actual misuse of their personal data—[t]here, "unauthorized charges.'" *Id.* at 1343. Such "conclusory

allegations of injury" could not confer standing based on the future risk of identity theft absent "specific evidence of *some* misuse of class members' data." *Id.* at 1343–44 (emphasis in original).

Two years later, in *Green-Cooper v. Brinker Int'l, Inc.*, the Eleventh Circuit applied the standing requirements set forth in *Tsao* in another data breach case but reached the opposite conclusion—the plaintiffs had alleged a concrete injury. 73 F.4th at 889–90. There, the plaintiffs brought a putative class action against a restaurant owner after a cyber-attack in which credit and debit cards were compromised. The plaintiffs specifically alleged "that their credit card and personal information was 'exposed for theft and sale on the dark web.'" *Id.* at 889. The allegation was much more specific than the plaintiff's vague claim in *Tsao* about "unauthorized charges," with plaintiffs in *Green-Cooper* alleging that, "based on [the defendant's] internal reporting, the information for all 4.5 million cards the hackers accessed in the [the defendant's] system were found on Joker Stash," a specific dark web marketplace for stolen payment data. *Id.* at 886–87.[3]

The Eleventh Circuit explained that this "critical" allegation – that the "hackers took credit card data and corresponding personal information from [the defendant's] restaurant systems and affirmatively posted that information for sale on Joker Stash" – was "the misuse for standing purposes that . . . was missing in *Tsao*." *Id.* at 889–90. Unlike in *Tsao*, the plaintiffs in *Green-Cooper* had thus sufficiently alleged both (1) a present injury—their credit card data and personal information "floating around on the dark web" and (2) a substantial risk of future injury—the future misuse of that posted personal information. *Id.* at 890.

Here, Plaintiff has alleged neither a present injury nor a risk of future injury sufficient to establish standing. Plaintiff generally alleges, upon information and belief, that unauthorized third

---

[3] In addition, in *Green-Cooper*, two of the three named plaintiffs alleged ***specific*** instances of unauthorized charges on their credit cards. *Id.* at 887.

parties gained access to his private information "with the ***intent*** of misusing" the information, "including marketing and selling" it. (Compl. ¶ 33) (emphasis added). Plaintiff further alleges that his information "***may*** end up for sale on the dark web or simply fall into the hands of companies that will use the detailed Private Information for target marketing without [his] approval." *Id.* ¶ 37 (emphasis added). Plaintiff does not allege that his personal information was actually posted on the dark web or that his personal information has been misused in any other way.

To the extent Plaintiff alleges that he *could* suffer future injury from misuse of the personal information potentially disclosed during the cyber-attack on ZP Law, Compl. ¶ 17, this alleged risk of misuse alone is not enough to satisfy the standing requirement under *Tsao* and its progeny. *Tsao*, 986 F.3d at 1343 ("[C]onclusory allegations of an 'elevated risk of identity theft' . . . are simply not enough to confer standing.") (citing *Muranksy*, 979 F.3d at 933). Without the kind of "critical" allegation of data misuse like that alleged in *Green-Cooper*, Plaintiff's conclusory allegations that he believes that his personal information may be sold or marketed in the future are purely speculative. *See Clapper*, 568 U.S. at 414 n.5 (an "attenuated chain of inferences" and "speculation about the unfettered choices made by independent actors not before the court" is insufficient to satisfy the "substantial risk standard"); *see also Tsao*, 986 F.3d at 1339, 1343–44 (applying *Clapper*); *DiPierro*, 737 F. Supp. 3d at 1325 (M.D. Fla. 2024) (finding that plaintiffs in putative class action against hospital did not plausibly plead sufficient specific misuse of their private information to establish a substantial risk of future harm and noting that even an allegation that plaintiffs "believe" the class's information had been sold on the dark web "as that is the modus operandi of hackers" is speculative and "not enough").[4]

---

[4] *See also Travis v. Assured Imaging LLC*, No. CV-20-00390-TUC-JCH, 2021 WL 1862446, at *9 (D. Ariz. May 10, 2021) (concluding that "even if their personal information was stolen, . . ." plaintiffs "have not shown that the personal information at issue is sufficiently sensitive to give

Because Plaintiff has not plausibly alleged that the cyber-attack on ZP Law placed him at a "substantial risk" of future injury or that such harm is "certainly impending," Plaintiff has failed to establish standing based on an "increased risk of future identity theft" theory.

### B. Plaintiff's alleged efforts to mitigate his perceived risk of future misuse of his personal information do not confer standing.

It is well established that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416, 133 S. Ct. at 1151; *see also Muransky*, 979 F.3d at 931. Where, as here, "the hypothetical harm alleged is not 'certainly impending,' or if there is not a substantial risk of the harm, a plaintiff cannot conjure standing by inflicting some direct harm on itself to mitigate a perceived risk." *Tsao*, 986 F.3d at 1339 (citing *Clapper*, 568 U.S. at 416, 422; *Muransky*, 979 F.3d at 931). Thus, determining whether a plaintiff has "alleged sufficient facts to plausibly plead a concrete risk of future harm resolves any related issues about expenditure of time and effort to mitigate against that future harm." *DiPierro*,737 F. Supp. at 1323.

In *Muranksy v. Godiva Chocolatier, Inc*., customers of Godiva chocolate stores alleged violations of the Fair and Accurate Credit Transactions Act, claiming that Godiva printed too many digits on credit card receipts and thus exposed customers to an elevated risk of identity theft. 979 F.3d at 922. The Eleventh Circuit held that the plaintiff's mitigation costs (i.e., additional time destroying or safeguarding receipts) were insufficient to confer standing because there was no substantial risk of identity theft. *Id.* at 931. While noting that allegations of "wasted time" could sometimes "state a concrete harm for standing purposes," the Court concluded that the plaintiff's "management-of-risk claim [wa]s bound up with his arguments about actual risk" *Id.* at 930–31

---

rise to an imminent or certainly impending injury in fact for Article III standing purposes in data breach cases.").

(citations omitted). As a result, his "assertion of wasted time and effort necessarily r[ose] or f[ell] along with" the Court's determination of whether there was a substantial risk of harm. *Id.* at 931.

In *Tsao*, the Eleventh Circuit cited *Muransky* in similarly rejecting the plaintiff's argument that his alleged efforts to mitigate potential future harm (i.e., closing his credit card accounts) provided an alternative basis for standing. 986 F.3d at 1344–45. In so doing, the Court explained that the mitigation costs the plaintiff alleged were "inextricably tied to his perception of the actual risk of identity theft" following the alleged data breach. *Id.* The plaintiff had voluntarily cancelled his credit cards, and the types of harm he identified (lost time, lost credit card rewards points, and loss of access to accounts) flowed from that cancellation. *Id.* at 1345. Accordingly, the Court held that the plaintiff could not "conjure standing . . . by inflicting injuries on himself to avoid an insubstantial, non-imminent risk of identity theft." *Id.*

Applying those cases here, Plaintiff has not suffered actual, present injuries in his efforts to mitigate the alleged risk of identity theft he believes has been caused by the cyber-attack on ZP Law. Plaintiff alleges that he has spent time "verifying the legitimacy and impact of the [incident], exploring credit monitoring and identity theft insurance options, self-monitoring [his] accounts and seeking legal counsel regarding [his] options for remedying and/or mitigating the effects of the [incident]." (Compl. ¶ 14). As in *Muransky* and *Tsao*, however, the mitigation efforts allegedly undertaken by Plaintiff are "inextricably tied" to his perception of the risk of fraud or identity theft following the incident. (*See id.*; *see also* Compl. ¶ 95 (alleging loss opportunity costs associated with effort expended and the loss of productivity "addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from embarrassment and identity theft"); *id.* ¶ 15 (alleging "lost time, annoyance, interference and inconvenience" due to the incident). As a result,

Plaintiff's allegations of time spent and effort expended necessarily fall with his failure to plausibly allege a substantial risk of future harm. *Muransky*, 979 F.3d at 931; *Tsao*, 986 F.3d at 1345.

Because Plaintiff has failed to demonstrate that there is a substantial risk of future identity theft or that identity theft is certainly impending, he cannot manufacture standing by spending time or incurring costs in anticipation of non-imminent harm.

### C. Plaintiff's conclusory damages allegations do not otherwise establish injury sufficient to confer standing.

To the extent the Complaint includes claims of other alleged harms, none of Plaintiff's allegations establish an injury-in-fact sufficient to confer standing.

Plaintiff alleges that he has "suffered actual injury in the form of damages to and diminution in the value of [his] private information." (Compl. ¶ 15). Plaintiff has again failed to show that his alleged injury is actual or imminent. While the Complaint alleges the existence of a "cyber black market" for the kinds of personal information potentially accessed or removed during the incident, *see* Compl. ¶¶ 57–59, Plaintiff does not allege that he has (or ever had) the intention of selling his personal information to anyone, whether in a legitimate market or otherwise. Another Florida district court has explained the problem with a diminished-value theory:

> [A]t bottom, Plaintiffs' diminished-value theory assumes that the [data breach] afforded companies with whom Plaintiffs would voluntarily trade their [private information] access to [that information] without Plaintiffs' permission." *Fraga v. UKG, Inc.*, No. 22-cv-20105, 2022 WL 19486310, at *12 (S.D. Fla. May 10, 2022). "But what basis exists for that assumption? None, in the Court's estimation." *Id.* At best, the assumption is impermissible "speculation about the unfettered choices made by independent actors not before the court." *All. for Hippocratic Med*., No. 23-235, 602 U.S. at 383, 144 S.Ct. 1540 (quoting *Clapper*, 568 U.S. at 414 n.5, 133 S.Ct. 1138).

*DiPierro*, 737 F. Supp. 3d at 1325 (alterations in original). For these reasons, courts within this circuit have repeatedly held that plaintiffs did not adequately allege a devaluation of their private information because they did "not plausibly explain how the data breach could have harmed

Plaintiffs' abilities to sell their information." *Id.* (quoting *Fraga*, 2022 WL 19486310, at *12) (cleaned up); *see also Fraga*, 2022 WL 19486310, at *10–12 (discussing cases rejecting a diminished value standing argument); *but see In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022) (concluding that an actual diminution of value of PHI and PII could occur in the "marketplace of credit").

Additionally, Plaintiff generally alleges that he has suffered "anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using and selling [his] private information." (Compl. ¶ 16). But again, "courts in this circuit have ordinarily recognized such harms as sufficiently concrete in the data breach context only when allegations of emotional distress are coupled with the substantial risk of future harm." *DiPierro*, 737 F. Supp. 3d at 1326 (internal quotation marks and citations omitted). Because Plaintiff has not plausibly alleged a substantial risk of future identity theft, his allegations of related anxiety and emotional distress do not establish a concrete injury for standing purposes.

## II.     Plaintiff fails to state a claim for negligence because he has not plausibly alleged causation.

"A negligence claim requires a plaintiff to show that (1) defendants owe plaintiffs a duty, (2) defendants breached the duty, (3) defendants' breach injured plaintiffs, and '(4) [plaintiffs'] damage [was] *caused by* the injury to the plaintiff as a result of the defendant's breach of duty." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (quoting *Delgado v. Laundromax, Inc.*, 65 So.3d 1087, 1089 (Fla. Dist. Ct. App. 2011)) (emphasis in original). "Generally, to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence." *Id.* at 1326.

In *Resnick v. AvMed, Inc.*, the Eleventh Circuit held that the plaintiffs in a data breach case plausibly pled causation when their identities were stolen within ten to fourteen months after the

alleged breach, and the sensitive information taken in the data breach was the same information used to later steal the plaintiffs' identities. 693 F.3d at 1326–27 ("Had Plaintiffs alleged fewer facts, we doubt whether the Complaint could have survived a motion to dismiss."); *see also Cravens v. Garda CL Se., Inc.*, No. 24-CV-80400-RLR, 2024 WL 5058304, at \*7–8 (S.D. Fla. Dec. 9, 2024) (concluding causation was sufficiently pled based on allegations that plaintiffs' PII/PHI was published on the dark web and that plaintiffs suffered actual identity theft, including fraudulent credit card transactions, after the alleged breach).

Here, Plaintiff has failed to plausibly allege causation. Plaintiff alleges that "[t]here is a close causal connection between Defendant's failure to implement security measures to protect Representative Plaintiff's and Class Members' Private Information and the harm suffered, by Representative Plaintiff and Class Members[,]" and that "Representative Plaintiff's and Class Members' Private Information was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information[.]" (Compl. ¶ 90). The Court is not bound to accept as true Plaintiff's conclusions of law. *Twombly*, 550 U.S. at 555.

Nor do any of Plaintiff's other allegations contain sufficient factual matter to plausibly allege causation sufficient to state a claim for negligence. *Iqbal*, 556 U.S. at 678 (a claim is facially plausible when the court can draw "the reasonable inference that the defendant is liable for the misconduct alleged" from the pled facts). Plaintiff cannot possibly have sufficiently alleged a nexus between the cyber-attack on ZP Law and harm suffered, where he has not even alleged any plausible harm. Plaintiff has not alleged that his personal information was published on the dark web, that he has suffered actual identity theft, or that his information has otherwise been misused. Much less has Plaintiff pled any factual allegations showing a causal link between the alleged conduct and any specific harm. Without more than speculative or conclusory assertions, Plaintiff's

negligence claim does not satisfy the threshold for plausibility and therefore should be dismissed.[5]

### III. Plaintiff fails to state a claim for breach of implied contract or implied covenant of good faith and fair dealing.

#### A. Plaintiff's breach of implied contract claim fails because Plaintiff has not plausibly alleged the existence of an implied contract.

An implied-in-fact contract "is based on an implicit promise, one that is inferred in whole, or in part, from the parties' conduct." *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 275 F. Supp. 3d 1332, 1342 (S.D. Fla. 2017) (citing *Tara Prods. v. Hollywood Gadgets, Inc.*, No. 09-cv-61436, 2010 WL 1531489, at *5–6 (S.D. Fla. Apr. 16, 2010)). "An implied contract requires the same elements as an express contract, and differs only in the parties' method of expressing mutual consent." *Id.* (quoting *Smith v. Casey*, No. 12-cv-23795, 2014 WL 11878422, at *4 (S.D. Fla. Oct. 29, 2014)). A plaintiff must therefore allege "(1) existence of a contract; (2) a material breach of the contract by the defendant; and (3) damages resulting from the defendant's breach of the contract." *In re Brinker Data Incident Litig.*, No. 18-cv-686, 2020 WL 691848, at *4 (M.D. Fla. Jan. 27, 2020) (citing *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1332 (11th Cir. 2017)). "To establish the existence of a contract under Florida law, the plaintiff must show offer, acceptance, consideration, and specificity in terms of the contract." *Id.* (citing *Mink*, 860 F.3d at 1332).

Here, Plaintiff fails to plausibly allege the existence of an implied contract. Plaintiff generally alleges that "[t]hrough their course of conduct, Defendant, Representative Plaintiff and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Representative Plaintiff's and Class Members' Private

---

[5] Plaintiff's contract claims also require a showing of causation and fail for the same reason. *Resnick*, 693 F.3d at 1325–26 (In Florida, "a breach of contract claim requires a party to show that *damages resulted from* the breach," and Florida courts "use breach of contract analysis to evaluate claims of breach of contract implied in fact and breach of the covenant of good faith and fair dealing.") (citations omitted) (emphasis in original).

Information." (Compl. ¶ 99). Plaintiff further alleges that ZP Law "solicited, invited, and required Representative Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices," and that "[a]s a condition of being *direct customers and/or employees of* Defendant, Representative Plaintiff and Class Members provided and entrusted their Private Information to Defendant." *Id.* ¶¶ 100–11 (emphasis added).

While the allegations are unclear, Plaintiff appears to suggest, through threadbare and conclusory allegations, that an implied contract existed between the parties based on ZP Law's alleged promise to directly serve or employ Plaintiff in exchange for receipt of his private information. (*See* Compl. ¶¶ 99–102). Even if that were true (which it is not because Plaintiff was never a "direct" customer or client or an "employee" of ZP Law), Plaintiff has not and cannot plausibly allege any fact to suggest ZP Law implicitly agreed to secure his personal information in exchange for services, employment compensation, or anything else.

In *Brush v. Miami Beach Healthcare Group Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017), the plaintiff sought medical treatment from the defendants' medical facility, and, in doing so, provided defendants with her private information. *Id.* at 1362. After the defendants' employee subsequently disclosed the plaintiff's personal information, plaintiff brought a claim for breach of implied contract against the defendants based on their alleged failure to safeguard her information. *Id.* at 1362–63. The court dismissed plaintiff's breach of implied contract claim, concluding:

> In this case, the Plaintiff checked into the Defendants' healthcare facility to obtain medical treatment. Nothing in the Plaintiff's Complaint gives rise to a factual inference that the Defendants tacitly agreed to secure her personal data in exchange for remuneration. It is clear from the Plaintiff's allegations that she transacted to receive healthcare services from the Defendants – not data security services beyond the privacy requirements already imposed on the Defendants by federal law. Accordingly, the Court cannot imply a contract to provide data security services based on the conduct of the parties.

*Id.* at 1369.

Here, Plaintiff's allegations reveal no facts that would imply a contract to provide data security services based on the conduct of the parties. To the contrary, Plaintiff's conclusory allegations, as vague as they may be, are simply implausible. As explained in the Notice, ZP Law had Plaintiff's personal information in its system in connection with legal services that the firm had performed on behalf of one of Plaintiff's health care providers. (Ex. A. at 1). Plaintiff did not provide any personal information directly to ZP Law as a "direct customer," "employee," or otherwise. Because the Court cannot possibly infer from Plaintiff's allegations the existence of an implied contract for data security services or specific cybersecurity obligations based on the parties' conduct, Plaintiff's claim for breach of implied contract must be dismissed.

### B. Plaintiff's standalone claim for breach of the implied covenant of good faith and fair dealing fails.

Under Florida law, a "breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151–52 (11th Cir. 2005). Accordingly, "a claim for the breach of the implied covenant of good faith and fair dealing cannot be maintained . . . in the absence of a breach of an express term of a contract." *Id.*

Here, Plaintiff pleads breach of an implied contract and breach of the implied covenant of good faith and fair dealing as separate causes of action. (Compl. ¶¶ 98–105, 106–10). But, as discussed, Plaintiff does not plausibly allege the existence of a contract between the parties. Nor does Plaintiff sufficiently identify any express term of an alleged contract that ZP Law allegedly breached. *See id.* Accordingly, Plaintiff's standalone claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

### CONCLUSION

For the foregoing reasons, ZP Law respectfully requests that the Court grant its Motion.

Dated: August 11, 2025

*/s/* Mark F. Raymond
**Mark F. Raymond** | Florida Bar No. 373397
Nelson Mullins Riley & Scarborough LLP
2 S. Biscayne Blvd.
One Biscayne Tower, 21st Floor
Miami, FL 33131
Telephone: 305.373.9411
Email: mark.raymond@nelsonmullins.com

*Attorneys for Defendant Zumpano Patricios, P.A.*

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), ZP Law requests a hearing on its Motion to Dismiss. ZP Law respectfully submits that oral argument would aid the Court in understanding the legal issues presented, particularly with respect to the threshold question of Article III standing in the context of an alleged data breach. Oral argument would allow the Parties to further address the contours of Eleventh Circuit case law applying standing principles in data breach actions and to answer any questions the Court may have regarding their application in this case. Undersigned counsel requests one hour be set aside for such hearing.

*/s/* Mark F. Raymond
**Mark F. Raymond** | Florida Bar No. 373397

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 11, 2025, a true and correct copy of the foregoing was filed with the Court's electronic filing CM/ECF system, which will send a notice of electronic filing on all counsel or parties of record.

*/s/* Mark F. Raymond
Mark F. Raymond

## <u>SERVICE LIST</u>

Laura Grace Van Note
Cole & Van Note
555 12th Street, Suite 1725
Oakland, CA 94607
(510) 891-9800
Email: lvn@colevannote.com

Jeremy L. Kahn
Berman Fink Van Horn P.C.
3475 Piedmont Road, Suite 1640
Atlanta, GA 30305
(404) 261-7711
Email: jkahn@bfvlaw.com